FILED

2014 Oct-08  PM 01:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:13-cv-01184-MHH** |
| | } | |
| **GHW, III, KATHERINE S. WEAVER, GEORGE WEAVER, JR., and M.J., a minor by and through her mother and next friend, N.J.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

In this declaratory judgment action, plaintiff State Farm Fire and Casualty Company asks the Court to declare that under the terms of a homeowners insurance policy and an umbrella policy that State Farm issued to defendants George Weaver, Jr. and Katherine Weaver, State Farm does not have a duty to defend or indemnify the Weavers' son, GHW III, in an underlying state court action. The other defendant in this case, M.J., a minor by and through her mother and next friend, N.J., is the plaintiff in the state court action.

State Farm has moved for summary judgment. (Doc. 16). Citing an intentional acts exclusion, State Farm asks the Court to hold that the company has

no obligation to provide a defense for GHW III in the state court action because Alabama's inferred intent rule establishes, as a matter of law, that GHW III intended to harm M.J. when he purportedly molested her.  The inferred intend rule states that "in cases involving sexual abuse of children, intent to injure is inferred as matter of law regardless of claimed intent." *State Farm Fire & Cas. Co. v. Davis*, 612 So. 2d 458, 463 (Ala. 1993) (internal quotations and citation omitted).  Because the Court concludes that the Alabama Supreme Court would not apply the per se rule to GHW III as a matter of law under the circumstances of this case, the Court denies State Farm's motion as it relates to State Farm's duty to defend.

State Farm also asks the Court to hold as a matter of law that the notice that the Weavers provided of a potential loss was untimely so that State Farm has no duty to defend GHW III.  The Court finds that questions of fact exist concerning the timeliness of notice.   Therefore, the Court denies State Farm's summary judgment motion on this ground.  The Court defers ruling on State Farm's duty to indemnify.

## I.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable

to the non-moving party. *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II.   RELEVANT FACTS

### A.   Underlying Incident and Complaint

On April 21, 2007, GHW III spent the night at a friend's house. M.J. was staying at the house too. (Doc. 16-1, ¶ 3). At the time, M.J. was nine years old, and GHW III was 14 years old. (Sealed Doc. 34, p. 15; Sealed Doc. 33-10, p. 2).[1] During the evening of April 21 or the morning of April 22, GHW III attempted to have sexual intercourse with M.J. (Doc. 16-1, ¶¶ 4-8). The circumstances surrounding the event are disputed. (Sealed Doc. 33-5, pp. 9-12).

About a month later, M.J. told her mother what happened. Her mother notified police and gave them a statement on May 28, 2007. (Sealed Doc. 33-2). Police arrested GHW III on June 21, 2007 and charged him with first-degree rape. (Sealed Doc. 33-10, p. 2). GHW III pled "true" to the charge and was placed on probation on September 18, 2007. (*Id.*).

A mental health coordinator for Jefferson County Family Court evaluated GHW III on July 5, 2007. She concluded that GHW III did not need "residential

---

[1] GHW III testified that he was 13 at the time. (Sealed Doc. 34, p. 15). Records from Jefferson County Family Court indicate that his birthday is December 6, 1992. (Sealed Doc. 33-10, p. 2). This means that GHW III was 14 years old on April 21, 2007. Either way, GHW III was a minor.

treatment, but could certainly benefit from some out-patient treatment." (Sealed Doc. 33-3, p. 5). The mental health coordinator referred GHW III to a clinical psychologist who examined him on August 15, 2007. (Sealed Doc. 33-4). The psychologist commented that GHW III had "social problems and thinking problems" and that he had "some difficulty getting along and being liked by his peers." (*Id.* at 3). She concluded that GHW III has "mild to moderate impulse control deficits and anger management issues." (*Id.* at 4). She also found that GHW III "has little understanding of exactly why his offense [sic] behavior was wrong, and he has difficulty accepting complete responsibility for the offense." (*Id.*).

As part of her evaluation, the psychologist gave GHW III the Millon Adolescent Clinical Inventory test, which is "an objective personality inventory designed specifically for adolescents." (*Id.* at 3). GHW III's responses to the MACI test revealed that he had "moderate problems with impulse control." (*Id.*). Adolescents who responded like GHW III on the MACI test "tend to be careless, impatient, reckless and have temper tantrums at times. Such teenagers do no [sic] plan or consider the consequences to their actions." (*Id.*).

In May 2011, Mr. Weaver received a letter from an attorney representing M.J. The letter stated that M.J. would be seeking civil damages. In the letter, M.J.'s attorney requested information regarding the Weavers' homeowners insurer.

(Doc. 17-1, Ex. A).   State Farm contends that the letter from M.J.'s attorney constituted the first notice that State Farm received of the claim against GHW III. (Doc. 17-1, ¶ 5; Doc. 17-1, Ex. A).

On May 30, 2013, M.J., by and through her mother and next friend, N.J., filed a complaint against GHW III in the Circuit Court of Jefferson County, Alabama.  (Doc. 16-1).  M.J. asserted claims against GHW III for: (1) negligent and wanton infliction of emotional distress, (2) negligent and wanton invasion of privacy, (3) negligent and wanton assault and battery, (4) negligent and wanton false imprisonment, and (5) negligence.  (Doc. 16-1, ¶¶ 4-9).  M.J. contends that she suffered the following injuries as a consequence of GHW III's alleged conduct: physical injuries to her genitalia, mental anguish, permanent injuries, loss of enjoyment of life, and past and future medical expenses "in an effort to cure and/or assist [M.J.] with tolerating her injuries."   (Doc. 16-1, p. 2).   M.J. seeks compensatory and punitive damages in the state court action against GHW III. (Doc. 16-1, p. 3).

In deposition testimony in the state court action, GHW III stated that, at the time of the alleged sexual assault, he did not consider the consequences of his actions.  He expalined:

> Q:    Do you believe that [your actions were] an invasion of her
>       privacy?
>
> A:    Yes, ma'am.

Q:    Do you believe that it had the potential to cause her emotional distress?

A:    Yes, ma'am.

Q:    I understand that that is as you are sitting her today as a 21 year old.  When you were 13 or 14—

A:    I wouldn't.

Q:    —did you consider that that was a possibility?

A:    No, ma'am.

Q:    Did you consider the consequences of your actions at that time?

A:    No, ma'am.

(Sealed Doc. 33-5, p. 13).

## B.    Applicable Policy Language

Mr. and Mrs. Weaver purchased a Homeowners Policy of Insurance, Policy No. 01-CV-1166-6, and a Personal Liability Umbrella Policy, Policy No. 01-B4-4303-6, from State Farm.  (Doc. 17-1, ¶ 3).  GHW III is an insured under both policies.  (*Id.*).   The policies were in effect from January 16, 2007 to January 16, 2008.  (*Id.*).  The Weavers seek coverage under the policies for GHW III's defense in the state court action.  The Court focuses its analysis on the umbrella policy.

The umbrella policy states that "[i]f a suit is brought against any insured for damages because of a loss to which this policy applies, we will provide a defense to the insured at our expense by counsel of our choice when the basis for the suit is

a loss that is not covered by any other insurance policy but is covered by this policy." (Doc. 16-3, p. 13). The umbrella policy defines "loss" as "an accident, including injurious exposure to conditions, which results in bodily injury or property damage . . ." or "the commission of an offense, or series of similar or related offenses, which result in personal injury. . . ." (Doc. 16-3, p. 3). The umbrella policy defines "personal injury" as "injury caused by one or more of the following offenses: a. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution; b. libel, slander, defamation of character or invasion of rights of privacy." (Doc. 16-3, p. 4).

The umbrella policy does not provide coverage for bodily injury or property damage that is expected or intended by the insured or that is the result of willful and malicious acts. (Doc. 16-3, p. 4). The policy also excludes coverage for personal injury when the insured "act[s] with specific intent to cause harm or injury." (Doc. 16-3, p. 4). The umbrella policy requires an insured to "immediately" notify State Farm in the event of a loss for which the policy might provide coverage. (Doc. 16-3, p. 17).[2]

_____

[2]  The operative coverage provision in the Weavers' homeowners policy states that State Farm must defend and indemnify an insured "[i]f a claim is made or suit brought against an insured for damages because of bodily injury. . . caused by an occurrence. . . ." (Doc. 16-2, p. 28). The homeowners policy defines an "occurrence" as "an accident, including exposure to conditions, which results in: (a) bodily injury, or (b) property damage." (Doc. 16-2, p. 15). The homeowners policy defines "bodily injury" as "physical injury, sickness, or disease to a person. (Doc. 16-2, p. 14). Under the terms of the policy, "bodily injury" does not include "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless

## III.   DISCUSSION

In this declaratory judgment action, the Court must determine whether State Farm has a duty "to defend and/or indemnify GHW, III for claims [that M.J.] made against him" in the underlying state court action based on GHW III's purported sexual molestation of M.J.   (Doc. 1, pp. 5-6).   It is too early for the Court to address the indemnity issue because the state court action against GHW III remains pending.   *See Assurance Co. of Am. v. Legendary Home Builders, Inc.*, 305 F. Supp. 2d 1266, 1270 (S.D. Ala. 2003) ("[A]n insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit.") (citations omitted); *see also Harleysville Mut. Ins. Co. v. Dapper, LLC,* 2010 WL 2925779, *4 (M.D.Ala. July 21, 2010) ("If Dapper wins [in state court], the indemnification issue is moot and the Court would never reach the issue. To resolve the duty to indemnify before the underlying state case concludes risks wasting judicial resources.").[3]

Unlike the indemnification issue, the duty to defend issue is ripe for

---

it arises out of actual physical injury to some person."   (Doc. 16-2, p. 14).   The homeowners policy does not provide coverage for bodily injury or property damage that "is either expected or intended by the insured" or that "is the result of willful and malicious acts of the insured."   (Doc. 16-2, p. 29).   Under the terms of the homeowners policy, an insured must provide written notice of an accident or occurrence to State Farm "as soon as practicable."   (Doc. 16-2, p. 31).

[3] The state court action is sealed.   Counsel in this federal action informed the Court that the state court stayed the underlying action on June 18, 2014, pending a ruling in this declaratory judgment action.

resolution.  "Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001) (citing *United States Fid. & Guar. Co. v. Armstrong,* 479 So. 2d 1164, 1168 (Ala. 1985), and *Ladner & Co. v. Southern Guar. Ins. Co.,* 347 So. 2d 100, 102 (Ala. 1977)).  "If the allegations of the injured party's complaint show an accident or occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id.*[4]  The Weavers' umbrella policy states that State Farm "will provide a defense" to the insureds "when the basis for the [underlying] suit is a loss that is not covered by any other insurance policy but is covered by this policy." (Doc. 16-3, p. 13).  Based on this provision, the Court focuses its coverage analysis on the umbrella policy because if M.J.'s suit against GHW III constitutes a loss that is covered by the umbrella policy, then it does not matter whether State Farm also has a duty to defend GHW III under the Weavers' State Farm homeowners policy.  Either way, State Farm has a duty to defend.

State Farm's duty to defend GHW III in the state court action is triggered if the acts alleged in the underlying state court complaint constitute a "loss" under the Weavers' umbrella policy.  The umbrella policy defines "loss" as "an accident,

---

[4] The parties agree that under applicable choice of law principles, Alabama law governs the coverage issue in this matter.  (Doc. 16, pp. 13-14; Doc. 31, p. 8).

including injurious exposure to conditions, which results in bodily injury or property damage during the policy period. . . . or the commission of an offense, or series of similar or related offenses, which result in personal injury during the policy period." (Doc. 16-3, p. 9). The umbrella policy defines "personal injury" as injury caused by one or more of the following: "(a) false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution; (b) libel, slander, defamation of character or invasion of rights of privacy." (Doc. 16-3, p. 4). In her state court complaint, M.J. alleges that GHW III invaded her privacy and falsely imprisoned her in an attempt to have sexual intercourse with her. (Doc. 16-1, ¶¶ 5, 7). These allegations fall squarely within the umbrella policy's definition of "personal injury."[5] Therefore, the Weavers have suffered a "loss" that triggers State Farm's duty to defend. State Farm must fulfill that duty unless the company can demonstrate either that a policy exclusion bars coverage or that the Weavers failed to abide by the policy's notice requirement such that the Weavers' delay precludes coverage for the loss.

---

[5] During the April 4, 2014 hearing on State Farm's summary judgment motion, State Farm's counsel conceded that M.J.'s state court allegations of invasion of privacy and false imprisonment satisfy the definition of personal injury under the Weavers' umbrella policy. (Sealed April 4, 2014 hearing transcript, pp. 14-15, 23).

A.     **Questions of Fact Exist Regarding Policy Exclusions that Potentially May Bar Coverage under State Farm's Umbrella Policy**

State Farm's umbrella policy does not cover losses that are the result of personal injury when the insured acted "with specific intent to cause harm or injury." (Doc. 16-3, p. 4).[6] Generally under Alabama law, whether an insured acts with specific intent to cause injury is a subjective question:

> [A]n injury is intended from the standpoint of the insured if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is expected from the standpoint of the insured if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his act.

*Ala. Farm Bureau Mut. Cas. Ins. Co. v. Dyer*, 454 So. 2d 921, 925 (Ala. 1984) (internal quotations omitted).  Here, the record contains evidence that indicates that GHW III did not intend to injure M.J. GHW III testified that he did not understand the consequences of his actions at the time he attempted to have sexual intercourse with M.J.  (Sealed Doc. 33-5, p. 13).  A clinical psychologist who examined GHW III in the months after the incident concluded that GHW III did not understand why his behavior was wrong.  (Sealed Doc. 33-4).[7]

---

[6] The umbrella policy also contains an exclusion for willful and malicious acts. That exclusion applies only to losses that are the result of an accident causing bodily injury or property damage. Because coverage is triggered based on "the commission of an offense" rather than an accident, the wilfill/malicious act exclusion is not relevant to the Court's analysis.

[7] In addition to examining the allegations in the complaint, to determine the scope of State Farm's duty to defend, the Court may consider admissible evidence.  *Hartford Cas. Ins. Co.*, 928 So. 2d at 1012.

State Farm asks the Court to disregard this evidence and to infer as a matter of Alabama law that GHW III intended to harm M.J.  *See Davis*, 612 So. 2d at 463-64.  In *Davis*, the Alabama Supreme Court "created one narrow exception [to *Dyer*'s subjective intent rule] in cases of sexual abuse of children" by an adult.  *Id.* at 459, 464.[8]  In the 21 years since the Alabama Supreme Court adopted the inferred intent rule in *Davis*, Alabama courts have applied the rule only when an adult insured is accused of sexually abusing a minor.[9]

The Alabama Supreme Court has not determined whether the inferred intent rule applies when both the insured and the victim are minors.  Because both M.J. and GHW III were minors when GHW III allegedly attempted to have intercourse

---

[8] Like Alabama, most jurisdictions infer intent to injure when an adult insured sexually abuses a minor.  When the Court of Appeals of South Carolina adopted the inferred intent rule, the Court noted that, in addition to Alabama, courts in the following states apply the inferred intent rule: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Washington, West Virginia, and Wisconsin. *See Mfrs. & Merchants Mut. Ins. Co. v. Harvey*, 498 S.E.2d 222, 226 n.1 (S.C. 1998).

[9] *See O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011) (doctor allegedly molested his minor patient); *Horace Mann Ins. Co. v. D.A.C.*, 710 So. 2d 1274 (Ala. Civ. App. 1998) (teacher allegedly molested one of his minor students); *see also D.B.C. v. Pierson*, 2014 WL 2155017 (N.D. Ala. 2014) (adults who owned modeling agency photographed and published sexually explicit images of minor females); *Safeco Ins. Co. of Am. v. Golden*, 2013 WL 4496284 (M.D. Ala. Aug. 20, 2013) (adult male allegedly molested minor female spending the night in his house); *A.S. ex rel. J.S. v. Horace Mann Ins. Co.*, 2013 WL 3381378 (N.D. Ala. July 8, 2013) (teacher allegedly molested one of his minor students); *Cotton States Mut. Ins. Co. v. Daniel*, 2008 WL 4999097 (M.D. Ala. Nov. 20, 2008) (adult male pastor and school administrator allegedly molested minor female); *Horace Mann Ins. Co. v. McGee*, 840 F. Supp. 875 (M.D. Ala. 1994) (adult male allegedly molested minor female students).

with M.J., this Court must predict whether the Alabama Supreme Court would infer as a matter of law that GHW III intended to harm M.J. *See State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011) ("Where, as here, we find no [state] Supreme Court decision directly on point, we must anticipate how the [state] Supreme Court would decide this case."). "This process is not exact; often [the Court] must draw [its] decision from comparisons to analogous cases." *Id.* (internal citation omitted).

Although nearly all jurisdictions apply the inferred intent rule in cases in which adult insureds sexually abuse minors,[10] courts are divided on whether the rule applies when the insured is a minor. A number of courts have applied the inferred intent rule in such cases.[11] An equal number of courts have concluded that the rule should not govern when the perpetrator and the victim are both minors.[12]

---

[10] *See* note 8, *supra*.

[11] *See Allstate Ins. Co. v. Steele*, 74 F.3d 878 (8th Cir. 1996) (under Minnesota law, 16 year old's intent inferred); *B.B. v. Continental Ins. Co.*, 8 F.3d 1288 (8th Cir. 1993) (holding that Missouri would adopt inferred intent rule in case of perpetrators who were 13 to 16 years old at the time of the offense); *Allstate Ins. Co. v. Bailey*, 723 F. Supp. 665, 668 (M.D. Fla. 1989) (under Florida law, 15 year old's intent inferred); *Allstate Ins. Co. v. Roelfs*, 698 F.Supp. 815 (D. Alaska 1987) (16 year old's intent inferred); *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 493 (W. Va. 2004) (holding that inferred intent rule applies regardless of the age of the actor); *Cuervo v. Cincinnati Ins. Co.*, 665 N.E.2d 1121 (Ohio 1996), *overruled on other grounds by Doe v. Shaffer*, 738 N.E.2d 1243 (Ohio 2000) (16 year old's intent inferred).

[12] *See Allstate Ins. Co. v. Patterson*, 904 F. Supp. 1270, 1284 (D. Utah 1995) ("the Utah Supreme Court would not automatically infer an intent to harm in the case of a minor who sexually assaults other minors but would look at all the surrounding facts and circumstances, including the parties' ages, the nature of their relationship and their past experience"); *Allstate Ins. Co. v. Jack S.*, 709 F. Supp. 963, 966 (D. Nev 1989) ("Although it may be understandable for a court to find as a matter of law that an adult intended to harm a child by sexually abusing

For a number of reasons, this Court concludes that the Alabama Supreme Court would not infer intent as a matter of law under the circumstances of this case. First, in *Davis*, the Alabama Supreme Court explained its rationale for refusing to extend *Dyer's* subjective test to cases involving sexual assault by an adult:

> *Dyer* did not involve sexual abuse, but the discharge of a gun. This court finds that *Dyer* can easily be distinguished from the instant case and that the *Dyer* result has a certain internal logic that the *McIntyre* result lacks. It might be plausibly argued, for example, that as a matter of metaphysics, a person such as the shooter in *Dyer* has a certain detachment from and ignorance of the mechanics of shooting even as he squeezes the trigger. Surely he knows that the gun will fire; surely he expects that when the gun fires the bullet will not fall ineffectually from the chamber onto the floor. But he cannot fully know until he has fired how the gun will react and what the bullet will do to its target. Obviously, in the state of Alabama, this realization of certain psychological or metaphysical workings aids an insured in his quest to force the insurer to pay for his deliberate act; *Dyer* governs just the

---

that child, it is too broad a leap in logic to find that a minor intended to injure another minor by engaging in sexual acts."); *N. Sec. Ins. Co., Inc. v. Stanhope*, 14 A.3d 257, 265 (Vt. 2010) (in the case of a minor perpetrator, a subjective test applies, requiring "the trier of fact [to] examine the facts and circumstances of the case before it, including the circumstances surrounding the sexual conduct, as well as the minor's age, ability, intelligence, and experience") (internal quotations and citation omitted); *Shelby Cas. Ins. Co. v. H.T.*, 918 A.2d 659, 666 (N.J. Ct. App. Div. 2007) ("[F]or a sexual offender under the age of fourteen, the inferred intent doctrine does not apply, and the offender's subjective intent must be determined on a case by case basis."); *Country Mut. Ins. Co. v. Hagan*, 698 N.E.2d 271, 277 (Ill. App. Ct. 1998) ("Although there are sound reasons for inferring that an adult who abuses a minor intends the injury caused by the abuse, extending a blanket presumption of intent to all minor perpetrators will lead to absurd results in some cases."); *United Servs. Auto Ass'n v. DeValencia*, 949 P.2d 525, 529 (Ariz. Ct. App. 1997) ("Just as our criminal law does not presumptively attribute to minors an adult's understanding of sexual matters, neither should our civil law. Accordingly, we follow those cases that decline to extend the presumption of injurious intent to minors."); *Fire Ins. Exchange v. Diehl*, 545 N.W.2d 602, 608 (Mich. 1996) ("[T]he inference on an intent to injure as a matter of law when a child is sexually assaulted should not apply to child assailants.").

precise situation in which an insured acts more out of detached stupidity or blunted sensitivity to others than out of evident malice.

But there is no similar detachment caused by a lack of experiential knowledge of the consequences when one's body, rather than a gun, lead pipe, or bazooka, is the offending instrumentality. With sexual abuse, as presented in the *McIntyre* facts and the facts of the instant case, there is no intervening instrumentality that could malfunction or behave in a way that the operator could not predict. The body of the perpetrator is the instrumentality, and the thought or impulse he has to do harm is the governor of the instrumentality. The perpetrator alone controls his movements, and he knows the consequences of them. By virtue of a thousand ordinary, daily movements, he learns kinetics and sensations—his body is not a stranger with properties that surprise him. The *Dyer* case is thus distinguishable in an important physical respect from cases like *McIntyre* and the instant case.

Davis, 612 So. 2d at 461-62 (quoting *Mann Ins. Co. v. Fore*, 785 F. Supp. 947, 951-52 (M.D. Ala. 1994)).

Inherent in this analysis in *Davis* is the proposition that an adult perpetrator controls his or her movements and acts on "the thought or impulse he has to do harm."  Whether a minor understands the consequences of sexual contact with another minor is a more complicated question.  To apply the rule of inferred intent, the Court must be able to say that a minor presumably acted with "the thought or impulse to do harm."  That is a presumption that the Court is reluctant to make with respect to a minor.  *See H.T.*, 918 A.2d at 664 ("Because the underlying premise of the [inferred intent] rule is that he perpetrator, through his or her life experiences, is aware of the certainty of causing harm, the vitality of the rule diminishes with age, and consequent reduction in the maturity and life experiences,

of the offender.")   As one court recognized, minors may have "'a lack of experimental knowledge of the consequences when one's body, rather than a gun, lead pipe, or bazooka, is the offending instrumentality.'"   *Patterson*, 904 F. Supp. 1270, 1283 (D. Utah 1995) (quoting *Fore*, 785 F. Supp. at 952).

State Farm argues that because the Alabama Supreme Court referred to "persons" when discussing the inferred intent rule in *Davis*, that court would not distinguish between adults and minors in its application of the rule.  (Sealed April 4, 2014 hearing transcript, p. 18).  The portion of *Davis* upon which State Farm relies for this argument is a direct quotation from *Whitt v. DeLue*, 707 F. Supp. 1011 (W.D. Wis. 1989):   "As the *Whitt* court further stated: '[The majority inferred-intent rule] stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. . . .'" *Davis*, 612 So. 2d at 465 (quoting *Whitt*, 707 F. Supp. at 1016).  State Farm states that the Alabama Supreme Court was "very specific in [its] language" by referring to an insured as a "person" instead of an "adult" in this quoted passage.  (Sealed April 4, 2014 hearing transcript, p. 18).   Therefore, according to State Farm, *Davis*'s inferred intent rule applies equally to minors and adult insureds.  The Court is not persuaded that the *Davis* court intended to extend the inferred intent rule to minors when it quoted *Whitt*.

The Court believes that the Alabama Supreme Court would recognize that minors, unlike adults, may not understand or know the consequences of their sexual contact with another minor. *See Patterson*, 904 F. Supp. at 1283 ("Courts that have refused to infer intent to a minor sex abuser have reasoned that 'it is too broad a leap in logic to find that a minor intended to injure another minor by engaging in sexual acts. Knowledge which may be inferred to an adult may not be properly inferred to a child.'") (quoting *Jack S.*, 709 F. Supp. at 966). The Court finds support for its conclusion in Alabama statutory and common law.

Statutorily, GHW III was a minor when the events in question occurred because he was 14 years old. *See* Ala. Code § 26-1-1(a) ("Any person . . . at the arrival at the age of 19 years, shall be relieved of his or her disabilities of minority and therefore shall have the same legal rights and abilities as persons over 21 years of age."); *see also* Ala. Code § 12-15-102 (defining a child as "[a]n individual under the age of 18 years. . . ." for purposes of juvenile court proceedings). Under Ala. Code § 13A-6-70(c)(1), GHW III was not legally able to consent to sexual intercourse. *Id.* ("A person is deemed incapable of consent[ing to a sexual act] if he is less than 16 years old . . . ."). "[I]f minors cannot appreciate the nature and consequences of, and therefore lack ability to consent to, sexual activity for purposes of [Alabama] criminal law, it would be inconsistent to hold, that purposes of [Alabama] civil law, when minors engage in sexual acts, *as a matter of law*,

they intend the consequences of their acts." *N. Sec. Ins. Co. v. Perron*, 777 A.2d 151, 160 (Vt. 2001) (emphasis in original).

Under Alabama common law, to determine whether a minor is civilly liable for an intentional tort, the Alabama Supreme Court examines a variety of factors:

> Whereas we recognize that a minor's age may be a factor in determining whether that minor has the capacity to be guilty of a tort, minority in and of itself is not a defense to an action for tort. *See Hooper Motor Co. v. Harris,* 226 Ala. 278, 146 So. 618 (1933). Rather, as stated by Roberts and Cusimano, ALABAMA TORT LAW HANDBOOK § 35.3 at 711 (1990), in order to determine the liability of a minor for his own tort, we should look to the following elements: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the education level of the child; (6) the maturity of the child; and (7) the age of the child.

*Boykin v. Magnolia Bay, Inc.*, 570 So. 2d 639, 641 (Ala. 1990). Additionally, the Alabama Supreme Court has deemed a child between the ages of 7 and 14 "prima facie [] incapable of contributory negligence." *Works v. Allstate Indem. Co.*, 594 So. 2d 60, 63 (Ala. 1992) (internal citations omitted). "However, a child between the ages of 7 and 14 may be shown by evidence to be capable of contributory negligence by evidence that he possesses that discretion, intelligence, and sensitivity to danger that the ordinary 14-year-old possesses." *Id.* (internal citation omitted). Therefore, inferring that minors intend the injuries that result from sexual contact with other minors is inconsistent with Alabama's tort law, which requires an analysis of the specific facts of a case to determine intent or lack

thereof.

Importantly, the issue here is not the degree of harm caused by sexual abuse of children.  Minors who are sexually abused suffer physical and emotional injury.  The Court simply does not believe that the Alabama Supreme Court would hold that all minor perpetrators intend that harm as a matter of law, regardless of the age of the insured and the circumstances surrounding the sexual contact.  In the words of the Appellate Division of the New Jersey Superior Court:

> We take no issue with the proposition that sexual molestation of a young child is inherently harmful.  But for that harm to be excluded from coverage the wrongdoer must intend or expect to cause it.  In our view, insistence on universal application of the inferred intent rule, without regard to the age of the wrongdoer, substitutes arbitrariness for fidelity to the rationale underlying the rule.  At some point, at some age, for some young wrongdoers, there is nothing left to commend the rule except to say that it is the rule.

*H.T.*, 918 A.2d at 656.

Applying the inferred intent rule to all minor perpetrators leads to peculiar results in some cases.  For example, "a six-year-old who engages in sexual experimentation with a peer would be deemed to have intended the same injury foreseen and caused by an adult who sexually molests a child."  *Hagan*, 698 N.E.2d at 277.  Counsel for State Farm acknowledges there may be situations in which the inferred intent rule may not apply, such as in a case of sexual assault by a 35 year old with the mental capacity of an eight year old.  (Sealed April 4, 2014 hearing transcript, p. 37).  Again, *Davis* is premised on the assumption that an

insured understands the nature of his or her conduct and acts with the thought or impulse "to do harm."  The Court will not make that assumption here.  Instead, a jury must weigh the relevant evidence and decide whether GHW III understood the nature of his sexual contact with M.J. and intended to do her harm.

### B.    The Weavers' Notice to State Farm Was Not Unreasonable as a Matter of Law.

The Court rejects State Farm's contention that it is entitled to summary judgment because the Weavers, including GHW III, did not provide timely notice in accordance with the terms of their insurance policies.  "Compliance with the notice requirements in an insurance policy is a condition precedent to recovery." *Empl'rs Mut. Cas. Co. v. Smith Const. & Dev., LLC*, 949 F. Supp. 2d 1159, 1169 (N.D. Ala. 2013) (citing *Pharr v. Cont'l Cas. Co.,* 429 So. 2d 1018, 1019 (Ala.1983)).  The Weavers' umbrella policy states that the Weavers must notify State Farm "immediately" in the event of a loss for which the policy might provide coverage.  (Doc. 16-3, p.17).[13]   "The Alabama Supreme Court has construed the term 'immediately' to require that notice be given 'within a reasonable time in view of all the facts and circumstances of the case.'"  *Smith Const. & Dev.*, 949 F. Supp. 2d at 1169 (quoting *S. Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 882 (Ala. 1976)).

---

[13] The Weavers' homeowners policy requires them to notify State Farm of an occurrence "as soon as practicable."  (Doc. 16-2, p. 31).

There are no hard and fast rules about what constitutes "a reasonable time in view of all the facts and circumstances."  Some courts have found that delays of four, six, or eight months were unreasonable as a matter of law.  *See USF Ins. Co. v. Metcalf Realty Co., Inc.*, 2013 WL 2443823 (N.D. Ala. 2013) (four month delay unreasonable); *Pharr v. Cont. Cas. Co.*, 429 So. 2d 1018 (Ala. 1983) (eight month delay unreasonable); *Thomas*, 334 So. 2d at 883, 885 (six month delay unreasonable).  Other courts have found that much longer delays in providing notice were not unreasonable.  *See United States Fid. & Guar. Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569 (Ala. 1982) (five year delay in providing notice to the insurer was not unreasonable under the circumstances).

When determining whether an insured's delay in giving notice was reasonable, the Court considers two factors:  (1) the length of the delay; and (2) the reasons for the delay.  *Travelers Indem. Co. of Conn. v. Miller*, 86 So. 3d 338, 342 (Ala. 2011) (citing *United States Fid. & Guar. Co. v. Baldwin Cnty. Home Builders Ass'n*, 770 So. 2d 72, 75 (Ala. 2000)).  The Court does not consider prejudice to the insurer.  *Id.*  "[W]here an insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice."  *Baldwin Cnty. Home Builders Ass'n*, 770 So. 2d at 75 (internal quotations and citations omitted).  On the other hand, "'[i]f conflicting inferences [regarding

the reasonableness of the delay] can be drawn from the evidence, the question of reasonableness is submitted to the trier of fact.'"  *Miller*, 86 So. 2d at 344 (quoting *Baldwin Cnty. Home Builders Ass'n*, 770 So. 2d at 75).

In this case, GHW III was arrested on June 16, 2007.  (Sealed Doc. 33-10, p. 2).  The Weavers did not notify State Farm of the alleged assault until nearly four years later in May 2011 when they received a letter from M.J.'s attorney.  (Doc. 17-1, ¶ 5; Doc. 17-1, p. 4; Doc. 31, pp. 16-17).  The Weavers explain that they did not notify State Farm of the alleged assault sooner because: (1) the incident did not occur at the Weavers' home but at the home of their son's friend, and the Weavers were not aware their State Farm policies might provide coverage for activity that occurred away from the insured premises; and (2) the case against GHW III was handled through the juvenile court, and the Weavers were not aware that M.J. could or would pursue a civil suit against GHW III.  (Doc. 31, p. 17; Sealed April 4, 2014 hearing transcript pp. 8-10).

Reasonable minds could differ over whether the Weavers' four-year delay in notifying State Farm of a possible occurrence or loss was reasonable under the circumstances.  For example, a trier of fact could infer that it was reasonable for the Weavers to assume that their homeowners policy would not cover conduct that occurred at another house.  On the other hand, a trier of fact could conclude from the evidence that the Weavers knew as soon as their son was arrested in June 2007

that they potentially suffered a covered loss and that failing to notify State Farm until May 2011 was unreasonable. Therefore, a trier of fact must determine whether, under the circumstances, it was reasonable for the Weavers to wait four years to notify State Farm of a possible loss.

## IV.   CONCLUSION

For the reasons outlined above, the Court **DENIES** State Farm's motion for summary judgment on the duty to defend issue. The Court will examine State Farm's duty to indemnify, if necessary, at an appropriate time in the future. Consistent with the discussion held on the record during the April 4, 2014 hearing, the Court **DIRECTS** the Clerk to please file this memorandum opinion and order under seal. The Court will lift the seal within 14 days unless any party files a written notice containing specific objections and explaining what portions of the memorandum opinion should be redacted from the public record.

**DONE** and **ORDERED** this October 8, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE